UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL ALLEN BURDIC,

                Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER
OF SOCIAL SECURITY,

                Defendant.

**DECISION AND ORDER**
18-CV-233-A

---

Plaintiff Michael Allen Burdic brings this action pursuant to the Social Security Act for review of a final decision of the Commissioner of Social Security, Andrew M. Saul (the "Commissioner" [1]), that denied his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Dkt. No. 1. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The parties each moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 13 and 18. Upon consideration of the record, and for the reasons set forth below, the Court grants plaintiff's motion for remand and denies the Commissioner's motion.

## DISCUSSION

The action is before the Court after an earlier stipulated remand to the Commissioner, *see Burdic v. Colvin*, 15-cv-153-A (Dkt. Nos. 11, 13), and the Court reviews the record to determine only whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's final decision upon remand. 42 U.S.C. § 405(g). The Court assumes the parties' familiarity with the prior proceedings, the evidence, and the issues before the Court.

An Administrative Law Judge (the "ALJ"), found plaintiff Burdic ineligible for

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Commissioner of Social Security is automatically substituted for Nancy A. Berryhill, the Acting Commissioner when the action was filed.

benefits upon remand by concluding that his impairments due to polysubstance abuse disorder, a mood disorder, degenerative joint disease of his right shoulder, degenerative disc disease, a knee injury, and a learning disorder, did not render plaintiff disabled because other work exists in significant numbers in the national economy that plaintiff could perform. *See* Tr. 481-82. The Court finds that the ALJ failed to adequately assess plaintiff's alleged multiple impairments.

Upon remand, the ALJ was specifically directed to, among other things:

> obtain updated evidence concerning the claimant's impairments, evaluate whether the claimant has a severe right upper extremity impairment and if so, include the resulting functional limitations in the residual functional capacity, give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations . . . ,

*See* Tr. 466. The ALJ failed to comply with these directions. For example, at Step 2, without any discussion of the medical evidence in the record, the ALJ found that plaintiff's degenerative joint disease of his right shoulder was a severe impairment. Tr. 469-72. Nevertheless, the ALJ then "gave little weight" to a consulting physician's opinion that plaintiff's upper right extremity suffered from a moderate impairment in the ALJ's RFC assessment on the ground that the consulting physician's opinion of even a moderate impairment was inconsistent with the "medical evidence as a whole." Tr. 479.

While the record before the ALJ on remand was not an easy one, an ALJ is required to follow the directions on remand. 20 C.F.R. § 404.977(b). As quoted above, the ALJ in this case was to "evaluate whether the claimant has a severe right upper extremity impairment" and to state "rationale with specific references to evidence of record in support of the assessed [RFC] limitations." Tr. 466. Had the ALJ followed these directions on remand, the apparent contradiction of a finding that substantial medical evidence of a severe right shoulder impairment existed with the finding that the very same evidence was inconsistent with a provider's medical opinion that the impairment was even a moderate one could have been avoided.

The remand also directed the ALJ to "further evaluate the claimant's mental impairments under listing 12.05, in particular, whether this impairment meets or

2

medically equals the criteria in listing 12.05." *See* Tr. 466. The ALJ failed adequately to do so. The ALJ did not even explicitly refer to listing 12.05 at Step 3.

This is not mere harmless error. Under Listing 12.05B, a claimant is disabled due to intellectual disability if the claimant has an IQ score under 70. Instead of determining whether plaintiff Burdic's IQ score of 65 met the listing at Step 3, the ALJ rejected the plaintiff's IQ score at Step 4 based upon speculative testimony elicited from a psychologist, Dr. Anderson, that the IQ score could have been diminished by intoxication, a hangover, or sleepiness. *Compare* Dr. Anderson's testimony at Tr. 498-99 *with* the ALJ's findings at Tr. 472 and 479. The psychologist who administered the plaintiff's IQ test, Dr. Santarpia, considered plaintiff's score of 65 a "valid and reliable" score, even though she recommended caution and acknowledged that the score could be an underestimation due to plaintiff's sleepiness and drowsiness during the evaluation. Tr. 253, *but see* Tr. 255). Dr. Anderson, for his part, did not testify that the IQ score of 65 obtained by Dr. Santarpia was invalid, unreliable or inaccurate (Tr. 498-99), and "only qualified specialists, Federal and State agency medical and psychological consultants, and other contracted medical and psychological experts may conclude that your obtained IQ score(s) is not an accurate reflection of your general intellectual functioning." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §112.00(H)(2)(d). The Court therefore finds that the ALJ's rejection of the IQ score of 65 (Tr. 472) without more than his inaccurate finding that Dr. Anderson and Dr. Santarpia both opined that plaintiff's sleepiness and lethargy *actually contributed* to the plaintiff's low IQ score, while otherwise giving "great weight" to Dr. Anderson's opinions based upon the limited testimony elicited during the hearing was not supported by substantial evidence in the record[2].

The ALJ also stated that:

> [a]fter careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

---

[2] Dr. Anderson did not explicitly address Listing 12.05 when he testified that there was "no evidence that would meet or equal a listing." Tr. 495. The Court finds Dr. Anderson's conclusory testimony that "no evidence" supported a Listing was not substantial evidence justifying rejection of the valid and reliable IQ score of 65, particularly because the remand required the ALJ to explicitly consider Listing 12.05.

3

> symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 475. But an ALJ's evaluation of claimants' subjective symptoms "cannot be based on their general credibility but instead must be evaluated on the basis of the evidentiary record alone . . . and [must] be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Soc. Sec. Rul. 16-3 (2016), 2016 WL 1020935 (rescinding and replacing Soc. Sec. Rul. 96-7p). An ALJ is required to specify which testimony the ALJ finds not credible, and then to provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination. *Chickori v. Astrue*, 534 F. App'x 71, 75-76 (2d Cir. 2013). Accordingly, whether the plaintiff's evidence of his subjective symptoms was "entirely consistent with the medical and other evidence in the record" (Tr. 475), was not the correct legal standard for assessing the evidence of the plaintiff's subjective symptoms.

Moreover, when a claimant allegedly suffers mental impairments, the ALJ is also required to use the Special Psychiatric Review Technique at the Steps 2 and 3 of the five-step evaluation to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520a. This special technique first requires the ALJ to assess the claimant's degree of functional limitation resulting from a mental impairment in four "broad functional areas" identified in the "paragraph B" of the adult mental disorders listings. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* SSR 96–8p, 1996 WL 374184, at *4. Those four functional areas are: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and, adapt or manage oneself" 20 C.F.R. §§ 404.1520a(c)(3), 416.920a (c)(3). "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and the evidence otherwise does not indicate that there is more than a minimal limitation in your ability to do basic work activities, then the reviewing authority will conclude that claimant's mental impairment is not 'severe' and will deny benefits." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (citing as amended 20 C.F.R. § 404. 1520a(d)(1)). If the claimant's mental impairment is severe, the ALJ will determine

4

whether the impairment meets or is equivalent in severity to any listed mental disorder. *Id.* If so, the claimant will be found to be disabled; if not, reviewing authority then proceeds to assess the claimant's residual functional capacity. 20 C.F.R. § 404.1520a(d)(3). The regulation at § 404.1520a "require[s] the ALJ's written decision to reflect application of the [special] technique, and explicitly provide[s] that the decision 'must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'" *Kohler*, 546 F.3d at 266 (quoting former 20 C.F.R. § 404.1520a(e)(2)).

And when a claimant alleging physical and mental impairments also allegedly suffers ill-effects of drug or alcohol abuse, the disability determination must include additional analysis because the Social Security Act provides that a claimant "shall not be considered disabled . . . if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled". 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. §§ 416.935(a), 404.1535(a); *see* SSR 13-2p. In such a case, the ALJ first assesses whether the claimant's physical and mental impairments result in disability while taking account of the ill-effects of drug and alcohol abuse during the five-step evaluation using the special technique, and then determines whether the claimant's impairments would stop or diminish if the claimant stopped drug and alcohol abuse. 20 C.F.R. § 416.935.

To determine whether alcoholism or drug addiction is a "material" factor, an ALJ is required to apply the following standards:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or

5

> alcoholism is a contributing factor material to the determination of disability.
>
> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 416.935(b), 404.1535(b).

In this case, the ALJ did not evaluate plaintiff Burdic's disabilities pursuant to these required procedures. As described above, a conditional assessment of disability that fully considers a claimant's drug addiction and alcoholism during the five-step evaluation, including use of the special technique, is required before the ALJ proceeds to assess the materiality of drug addiction and alcoholism. *See e.g.*, *Dailey v. Astrue*, 2010 WL 4703599, *7 (W.D.N.Y. Oct. 26, 2010). The ALJ at Step 3 found the plaintiff to have the severe impairment of a polysubstance abuse disorder, and then indicated that this impairment, among others, "significantly limit the ability to perform basic work activities as required by SSR 85-28." Tr. 469. The ALJ indicated that plaintiff relayed to his treating physicians that he had a long legal history all stemming from his substance abuse. Tr. 473. Indeed, plaintiff's history includes three convictions for Driving While Intoxicated as well as multiple parole violations for testing positive for multiple substances, such as marijuana, morphine, and benzodiazepines. Tr. 478. Plaintiff also underwent chemical dependency treatment from December 19, 2014 to February 11, 2016. Tr. 728-997. In November of 2014, plaintiff admitted to a physician that he continued to smoke marijuana two to three times per week since October of 2014. Tr. 478, 728. There is other extensive evidence referenced throughout the ALJ's Decision of plaintiff's substance abuse history.

Nevertheless, the ALJ discounted plaintiff's mental impairments due to his substance abuse without first assessing his mental impairments with substance abuse, contrary to the protocol required by 20 C.F.R. § 416.935. And as noted earlier, the ALJ concluded at Step 2 -- without supporting expert evidence -- that plaintiff's IQ scores were invalid. Tr. 472. Moreover, because the ALJ considered the paragraph B

functions without first including the impact of plaintiff's substance abuse in finding the plaintiff's mental impairments to be non-severe, the ALJ's findings were erroneous.

Plaintiff has advanced additional arguments for finding that the ALJ's decision was either not supported by substantial evidence or applied incorrect legal standards. "However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach [these issues]. *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F.Supp.3d 419 (W.D.N.Y. 2019) (citing *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016)) ("declining to reach arguments 'devoted to the question whether substantial evidence supports various determinations made by [the] ALJ where the court had already determined remand was warranted").

## CONCLUSION

Based on the foregoing, plaintiff Michael Allen Burdic's motion pursuant to Fed. R. Civ. P. for judgment on the pleadings (Dkt. No. 13) is granted and the case is remanded. The Commissioner's cross-motion for judgment on the pleadings (Dkt. No. 18) is denied. The Clerk shall amend the caption to reflect substitution of the Commissioner for the Acting Commissioner, shall enter judgment for the plaintiff, and shall close the case.

**IT IS SO ORDERED.**

    *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: October 9, 2019